UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                    )
UNITED STATES OF AMERICA,              )
                                                    )
    Plaintiff,                                )
                                                    )
             v.                             )          Civil No. 3:21cv0715
                                                    )
THE METROPOLITAN DISTRICT,          )
                                                    )
                                                    )
    Defendant.                             )
                                                    )
_____)

## COMPLAINT

    Plaintiff, the United States of America, by the authority of the Attorney General, through

the undersigned attorneys, acting at the request of the Administrator of the United States

Environmental Protection Agency ("EPA"), brings this Complaint and alleges as follows:

## NATURE OF ACTION

    1.     In this civil action under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C.

§ 7413(b), the United States seeks civil penalties and injunctive relief against The Metropolitan

District ("District" or "Defendant") for violations of the sewage sludge incineration ("SSI") unit

standards and regulations of the CAA at 40 C.F.R. Part 60, Subpart LLLL ("NSPS Subpart

LLLL"), and Sections 111 and 129 of the CAA, 42 U.S.C. §§ 7411 and 7429.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over the subject matter of this action, and over

Defendant, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42

U.S.C. § 7413(b).

3.      This Court has personal jurisdiction over the District because it is a public non-

profit municipal corporation in Hartford, Connecticut.

4.      Venue is proper because the Defendant is found and conducts business in this

judicial district and because the alleged violations took place in this judicial district. 28 U.S.C.

§§ 1391 and 1395; 42 U.S.C. § 7413(b).

**NOTICE**

5.      January 29, 2016, Defendant contacted EPA Region 1 to request the EPA waive

the March 21, 2016 Federal Plan emissions testing deadline for "existing" SSI units under 40

C.F.R. Part 62, Subpart LLL and grant Defendant an extension to meet the NSPS LLLL

submittal requirements for "new" SSI units because the Defendant was in the process of

constructing a new dry ash handling facility, the construction of which would cause Defendant's

three SSI units to exceed the fifty percent of original cost threshold described in the definition of

modification in 40 C.F.R. § 60.4930 and therefore become "new" units subject to NSPS LLLL.

6.      February 1, 2016, EPA Region 1 held a teleconference meeting with Defendant.

At that meeting, Defendant claimed its three SSI units were not yet subject to NSPS LLLL, since

the ash handling system had not yet been fully connected.

7.      At the February 1, 2016 meeting, Defendant agreed the three SSI units would

become new units subject to NSPS LLLL upon connection of the new dry ash handling system,

the cost of which would cause the cumulative cost of changes to the units to exceed 50% of their original cost.

8.      On June 27, 2016, Defendant discussed with EPA Region 1 staff during the site inspection meeting at the Facility that the Defendant "…believed that upon completion of construction and start-up of the dry ash handling facility, the Hartford WPCF [Water Pollution Control Facility] SSI complex would be regulated under the proposed standards for new multi-hearth incinerators."

9.      In order to conduct its own independent assessment of whether the District was (or would soon be) subject to NSPS LLLL rather than the Federal Plan, EPA issued a September 7, 2016 CAA Section 114 Reporting Requirement ("Reporting Requirement") to Defendant.

10.      Defendant responded to the Reporting Requirement in November 2016.

11.      In Defendant's November 2016 response to the Reporting Requirement, it stated that it obtained a different consultant, CH2M, "…to conduct a cost analysis of modifications to the SSI complex over the life of the complex…" and that "[t]he updated cost accounting indicates that the District's costs of changes over the life of the Hartford WPCF's SSI complex do not exceed fifty percent (50%) of the original cost of building and installing the SSI units. Therefore, the Hartford WPCF SSI complex will continue to be regulated under the standards for existing multi-hearth SSIs, even after the completion of the dry ash facility."

12.      EPA issued to Defendant a Notice of Violation ("NOV"), dated January 12, 2017, and provided a copy of the NOV to the State of Connecticut. The NOV set forth EPA's findings that Defendant's three SSI units are subject to NSPS LLLL requirements for "new" SSI units and that Defendant has violated and continues to violate numerous provisions of NSPS LLLL described in this Complaint. The NOV provided Defendant an opportunity to confer with EPA.

13.     Since EPA's issuance of the January 12, 2017 NOV, EPA has conferred and continued to communicate with the District regarding the NSPS LLLL compliance requirements, including applicable testing and reporting requirements.

14.     On February 19, 2019, EPA issued the District a Testing and Reporting Requirement, pursuant to CAA § 114 ("Testing and Reporting Requirement").

15.     The District submitted a partial response to the Testing and Reporting Requirement on March 19, 2019 and sought a 30-day extension at that time. The District's response to the Testing and Reporting Requirement was due by April 20, 2019. The District provided a response on April 18, 2019. The information the District provided confirmed that the District is subject to NSPS LLLL.

16.     The United States has provided notice of the commencement of this action to the State of Connecticut in accordance with Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## AUTHORITY

17.     The Department of Justice has the authority to bring this action on behalf of the Administrator of EPA under 28 U.S.C. §§ 516 and 519 and Section 305(a) of the CAA, 42 U.S.C. § 7605(a).

## DEFENDANT

18.     Defendant is a public non-profit municipal corporation in Connecticut.

19.     At all relevant times, the District owned and operated the Hartford Water Pollution Control Facility at 240 Brainard Road in Hartford, Connecticut (the "Facility"), including the three multiple hearth SSI units located there.

20.     The District is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

21.     The CAA, 42 U.S.C. §§ 7401-7671q, establishes a comprehensive scheme for protecting and enhancing the quality of the nation's air to promote public health and welfare. 42 U.S.C. § 7401(b)(1).

### CAA Sewage Sludge Incineration Unit Requirements

22.     "Sewage sludge" is solid, semi-solid, or liquid residue generated during the treatment of domestic sewage in a treatment works. Sewage sludge includes, but is not limited to, domestic septage; scum or solids removed in primary, secondary, or advanced wastewater treatment processes; and a material derived from sewage sludge. 40 C.F.R. § 60.4930.

23.     A "sewage sludge incineration (SSI) unit" is defined as: "an incineration unit combusting sewage sludge for the purpose of reducing the volume of the sewage sludge by removing combustible matter. Sewage sludge incineration unit designs include fluidized bed and multiple hearth. An SSI unit also includes, but is not limited to, the sewage sludge feed system, auxiliary fuel feed system, grate system, flue gas system, waste heat recovery equipment, if any, and bottom ash system. The SSI unit includes all ash handling systems connected to the bottom ash handling system. The combustion unit bottom ash system ends at the truck loading station or similar equipment that transfers the ash for final disposal. The SSI unit does not include air pollution control equipment or the stack." 40 C.F.R. § 60.4930.

24.     "Combustion of solid waste, and specifically sewage sludge, causes the release of a wide array of air pollutants, some of which exist in the waste feed material and are released unchanged during combustion, and some of which are generated as a result of the combustion process itself." 76 FR 15372, 15375 (March 21, 2011).

5

25.     SSI stacks emit mercury, total and fine particulate matter, dioxins and dibenzofurans, hydrogen chloride, nitrogen oxides, carbon monoxide, sulfur dioxide, lead, cadmium, and opacity. Ash handling processes at SSI units generate fugitive particulate matter emissions. 76 FR 15372, 15375 (March 21, 2011).

26.     Section 129(a)(1) of the CAA, 42 U.S.C. § 7429(a)(1), requires EPA to "…establish performance standards and other requirements pursuant to section 7411 of this title and this section for each category of solid waste incineration units. Such standards shall include emission limitations and other requirements applicable to new units, and guidelines…and other requirements applicable to existing units." 42 U.S.C. § 7411; 42 U.S.C. § 7429(a)(1).

27.     On March 21, 2011, EPA promulgated NSPS LLLL ("new" SSI unit standards) and emission guidelines for "existing" SSI units at 40 CFR Part 60, Subpart MMMM ("Emission Guidelines"). 76 FR 15372 (March 21, 2011).

28.     An SSI unit is deemed a "new" SSI unit, and is therefore subject to NSPS Subpart LLLL, if: (a) its construction began after October 14, 2010, or it was modified after September 21, 2011; (b) it meets the definition of an SSI unit in 40 C.F.R. § 60.4930; and (c) it is not exempt under 40 C.F.R. § 60.4780. 40 C.F.R. § 60.4770. (emphasis added)

29.     A "modified" SSI unit "means an existing SSI unit that undergoes a modification, as defined in this section." 40 C.F.R. § 60.4930.

30.     "Modification" is defined as "…a change to an existing SSI unit later than September 21, 2011 and that meets one of two criteria: (1) The cumulative cost of the changes over the life of the SSI unit exceeds 50 percent of the original cost of building and installing the SSI unit (not including the cost of land) updated to current costs (current dollars)" and such changes are within the definition of the SSI unit;" or "(2) Any physical change in the SSI unit or

6

change in the method of operating it that increases the amount of any air pollutant emitted for which section 129 or section 111 of the Clean Air Act has established standards." 40 C.F.R. § 60.4930.

31.     NSPS Subpart LLLL for "new" SSI units and the Emission Guidelines for "existing" SSI units both include emission limitations for the following nine pollutants: mercury, total and fine particulate matter, dioxins and dibenzofurans, hydrogen chloride, nitrogen oxides, carbon monoxide, sulfur dioxide, lead, cadmium, and opacity, where appropriate. 76 FR 15372, 15375 (March 21, 2011).

32.     NSPS Subpart LLLL requires that owners and operators of subject SSI units complete various actions, including but not limited to:

   a.  Conducting a siting analysis. 40 C.F.R. § 60.4800.

   b.  Operating SSI units only while a fully trained and qualified SSI unit operator is accessible, with certain exceptions, and who has completed an incinerator operator training course and maintained or renewed qualifications, within the requisite time periods. *See*, 40 C.F.R. §§ 60.4810, 60.4815, 60.4820, 60.4825, 60.4830, 60.4835.

   c.  Conducting initial and annual air pollution control device inspections and conducting any necessary repairs. 40 C.F.R. §§ 60.4875(a), (b), 60.4895(a), (b).

   d.  Submitting site-specific monitoring plans and conducting initial performance evaluations. 40 C.F.R. § 60.4880.

   e.  Meeting the emission limits and standards and demonstrating initial and ongoing compliance with the emission limits and standards, specified in Table 2. 40 C.F.R. §§ 60.4845, 60.4865, 60.4885.

f.   Submitting a mercury petition to "…the Administrator for specific operating parameters, operating limits, and averaging periods…" 40 C.F.R. § 60.4855(b).

g.   Establishing, monitoring, meeting, confirming or re-establishing site-specific operating limits. *See*, 40 C.F.R. §§ 60.4850, 60.4855(a), 60.4870, 60.4890.

h.   Submitting an initial compliance report, annual compliance report, and deviation reports. 40 C.F.R. §§ 60.4915(a)-(e).

33.   Section 129(f) of the CAA, 42 U.S.C. § 7429(f), prohibits operation of an SSI unit in violation of any performance standard, emission limit, or other requirement after the effective date of the standard, limitation, or requirement.

34.   States that had "existing" SSI units were required to submit to EPA for approval plans to implement and enforce the Emission Guidelines for existing SSI units. 42 U.S.C. § 7429(b)(2).

35.   In the event not all states would submit an approvable plan, the CAA required EPA to "develop, implement and enforce a plan for existing solid waste incineration units within any category located in any State which has not submitted an approvable plan . . . ." within two years after the guidelines' promulgation. 42 U.S.C. § 7429(b)(3). EPA's plan was required to ensure that existing units subject to the plan were in compliance with the guidelines no later than five years after the date the guidelines were promulgated. *Id*.

36.   Under Section 111(d) and Section 129(b)(3) of the CAA, 42 U.S.C. §§ 7411(d), 7429(b)(3), EPA promulgated the "Federal Plan Requirements for Sewage Sludge Incineration Units Constructed on or Before October 14, 2010 (hereinafter, the "Federal Plan") for the control of emissions from "existing" SSI units in states that did not submit an approvable state plan. 40

C.F.R. Part 62, Subpart LLL. The Federal Plan became effective May 31, 2016. 81 Fed. Reg. 26040 (April 29, 2016).

37.     The Federal Plan implements requirements in the Emission Guidelines to those in NSPS LLLL and are based upon the Emission Guidelines for "existing" SSI units.

38.     Certain Federal Plan requirements are less stringent than those in NSPS LLLL.

39.     The State of Connecticut did not submit an approvable state plan for the control of emissions from "existing" SSI units.

40.     EPA has the sole authority to enforce the Federal Plan, which applies to "existing" SSI units in Connecticut, because Connecticut did not submit an approvable state plan and did not seek delegation of authority to enforce the Federal Plan.

41.     EPA currently has the sole authority to enforce NSPS Subpart LLLL in Connecticut, which applies to "new" SSI units, because the State of Connecticut does not currently have delegation of NSPS Subpart LLLL.

## CAA Enforcement Authority

42.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the United States to commence a civil action seeking injunctive relief and the recovery of civil penalties for each violation of any requirement or prohibition of Subchapter I of the CAA, 42 U.S.C. §§ 7401-7515, including CAA Sections 111 and 129, and of regulations promulgated under Subchapter I of the CAA, including NSPS Subpart LLLL.

43.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, promulgated in accordance with the Debt Collection Improvement Act of 1996 ("DCIA"), 31 U.S.C. §§ 3701 et seq., provide for the assessment of civil penalties up to $102,638 per day as adjusted by the DCIA.

## GENERAL ALLEGATIONS

44.     Under 40 C.F.R. § 60.4770(a), all three of the Facility's SSI units became subject to NSPS Subpart LLLL, because (1) Defendant modified each SSI unit after September 21, 2011; (2) each SSI unit qualifies as an SSI unit under 40 C.F.R. § 60.4930; (3) each SSI unit is not exempt under 40 C.F.R. § 60.4780.

### SSI unit #1

45.     SSI unit #1 qualifies as an SSI unit under 40 C.F.R. § 60.4930 because it combusts sewage sludge to reduce the volume of the sewage sludge by removing combustible matter at a wastewater treatment facility.

46.     Defendant modified SSI unit #1 after September 21, 2011.

47.     SSI unit #1 meets the statutory definition of "modified SSI unit" under NSPS Subpart LLLL because the cumulative cost of the changes over the life of SSI unit #1 exceeds 50 percent of the original cost of building and installing SSI unit #1 (not including the cost of land), updated to current dollars.

48.     At a minimum, Defendant made the following changes to SSI unit #1 after it was built and installed:

    a.  replacement of the centershaft drive at SSI unit #1, in the late 1980s, and again between 1998 and 2001;

    b.  addition of four belt presses in 1981, 1983, 1985, and 1989;

    c.  addition of centrifuges #1 and #2 in 1994, and #3 in 1999;

    d.  addition of an exterior ash pipe, between 1998 and 2001;

    e.  replacement of combustion components and electrical and instrumentation upgrades at SSI unit #1, between 1998 and 2001;

f.   addition of biosolids conveyance equipment, including two sewage sludge cake storage bins, four sewage sludge cake pumps, and cake piping, between 1999 – 2001, and 2004;

g.   changes to the controls for centrifuges #1, #2, and #3, between 2012 and 2015;

h.   addition of centrifuge #4, between 2013 and 2016;

i.   addition of a dry ash handling system, between 2013 and 2016.

49.   SSI unit #1 is not exempt under 40 C.F.R. § 60.4780 because it is located at a wastewater treatment facility designed to treat domestic sewage sludge.

50.   Upon information and belief, SSI unit #1 became subject to NSPS Subpart LLLL, at the earliest, in 2013.

51.   Had the Defendant not triggered NSPS Subpart LLLL applicability at SSI unit #1, SSI unit #1 would have been subject to the Federal Plan, which became effective May 31, 2016.

**SSI unit #2**

52.   SSI unit #2 qualifies as an SSI unit under 40 C.F.R. § 60.4930 because it combusts sewage sludge to reduce the volume of the sewage sludge by removing combustible matter at a wastewater treatment facility.

53.   Defendant modified SSI unit #2 after September 21, 2011.

54.   SSI unit #2 meets the statutory definition of "modified SSI unit" under NSPS Subpart LLLL because the cumulative cost of the changes over the life of SSI unit #2 exceeds 50 percent of the original cost of building and installing SSI unit #2 (not including the cost of land), updated to current dollars.

55.   At a minimum, Defendant made the following changes to SSI unit #2 after it was built and installed:

   a.   replacement of the centershaft drive at SSI unit #2, in the late 1980s, and again between 1998 and 2001;

   b.   addition of four belt presses in 1981, 1983, 1985, and 1989;

   c.   addition of centrifuges #1 and #2 in 1994, and #3 in 1999;

   d.   addition of an exterior ash pipe, between 1998 and 2001;

   e.   replacement of combustion components and electrical and instrumentation upgrades at SSI unit #2, between 1998 and 2001;

   f.   addition of biosolids conveyance equipment, including two sewage sludge cake storage bins, four sewage sludge cake pumps, and cake piping, between 1999 – 2001, and 2004;

   g.   changes to the controls for centrifuges #1, #2, and #3, between 2012 and 2015,

   h.   addition of centrifuge #4, between 2013 and 2016;

   i.   addition of a dry ash handling system, between 2013 and 2016.

56.   SSI unit #2 is not exempt under 40 C.F.R. § 60.4780 because it is located at a wastewater treatment facility designed to treat domestic sewage sludge.

57.   Upon information and belief, SSI unit #2 became subject to NSPS Subpart LLLL, at the earliest, in 2013.

58.   Had the Defendant not triggered NSPS Subpart LLLL applicability at SSI unit #2, SSI unit #2 would have been subject to the Federal Plan, which became effective May 31, 2016.

**SSI unit #3**

59.   SSI unit #3 qualifies as an SSI unit under 40 C.F.R. § 60.4930 because it combusts sewage sludge to reduce the volume of the sewage sludge by removing combustible matter at a wastewater treatment facility.

12

60.     Defendant modified SSI unit #3 after September 21, 2011.

61.     SSI unit #3 meets the statutory definition of "modified SSI unit" under NSPS Subpart LLLL because the cumulative cost of the changes over the life of SSI unit #3 exceeds 50 percent of the original cost of building and installing SSI unit #3 (not including the cost of land), updated to current dollars.

62.     At a minimum, Defendant made the following changes to SSI unit #3 after it was built and installed:

    a.   addition of four belt presses in 1981, 1983, 1985, and 1989;

    b.   addition of centrifuges #1 and #2 in 1994, and #3 in 1999;

    c.   addition of an exterior ash pipe, between 1998 and 2001;

    d.   restarting of SSI unit #3 through engineering, refractory, and combustion component work, between 2008 and 2010;

    e.   addition of biosolids conveyance equipment, including two sewage sludge cake storage bins, four sewage sludge cake pumps, and cake piping, between 1999 – 2001, and 2004;

    f.   changes to the controls for centrifuges #1, #2, and #3, between 2012 and 2015;

    g.   addition of centrifuge #4, between 2013 and 2016;

    h.   addition of a dry ash handling system, between 2013 and 2016.

63.     SSI unit #3 is not exempt under 40 C.F.R. § 60.4780 because it is located at a wastewater treatment facility designed to treat domestic sewage sludge.

64.     Upon information and belief, SSI unit #3 became subject to NSPS Subpart LLLL, at the earliest, in 2013.

65.    Had the Defendant not triggered NSPS Subpart LLLL applicability at SSI unit #3, SSI unit #3 would have been subject to the Federal Plan, which became effective May 31, 2016.

### CLAIMS FOR RELIEF

### First Claim for Relief – Failure to Meet the Emission Limits and Standards and Demonstrate Initial and Continuous Compliance with Applicable Emission Limits and Standards

66.    Plaintiff realleges and incorporates Paragraphs 1 through 65, as if fully set forth herein.

67.    Under 40 C.F.R. §§ 60.4845, 60.4865, 60.4885, the owner or operator of an SSI unit subject to NSPS Subpart LLLL must meet, within the requisite time period, the emission limits and standards specified in Table 2 of NSPS Subpart LLLL and demonstrate initial and continuous compliance with the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

68.    Defendant failed to meet at SSI unit #1, within the requisite time period, the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

69.    Defendant failed to demonstrate SSI unit #1's initial compliance with the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

70.    Defendant failed to demonstrate SSI unit #1's ongoing compliance with the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

71.    Defendant failed to meet at SSI unit #2, within the requisite time period, the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

72.    Defendant failed to demonstrate SSI unit #2's initial compliance with the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

73.    Defendant failed to demonstrate SSI unit #2's continuous compliance with the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

14

74.     Defendant failed to meet at SSI unit #3, within the requisite time period, the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

75.     Defendant failed to demonstrate SSI unit #3's initial compliance with the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

76.     Defendant failed to demonstrate SSI unit #3's continuous compliance with the emission limits and standards specified in Table 2 of NSPS Subpart LLLL.

77.     Accordingly, Defendant has violated, and continues to violate, 40 C.F.R. §§ 60.4845, 60.4865, and 60.4885, and Section 129(f)(3) of the CAA, 42 U.S.C. § 7429(f)(3).

78.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, promulgated in accordance with the DCIA, 31 U.S.C. §§ 3701 et seq., provide for the assessment of civil penalties up to $102,638 per day as adjusted by the DCIA. The violations set forth above are subject to injunctive relief and up to $102,638  per violation per day.

## Second Claim for Relief – Failure to Prepare a Siting Analysis

79.     Plaintiff realleges and incorporates Paragraphs 1 through 78, as if fully set forth herein.

80.     Under 40 C.F.R. § 60.4800, an owner or operator of an SSI unit subject to NSPS Subpart LLLL must prepare a siting analysis.

81.     Defendant failed to conduct a siting analysis with respect to SSI unit #1 at the Facility.

82.     Defendant failed to conduct a siting analysis with respect to SSI unit #2 at the Facility.

83.     Defendant failed to conduct a siting analysis with respect to SSI unit #3 at the Facility.

84.     Accordingly, Defendant has violated, and continues to violate, 40 C.F.R. § 60.4800 and Section 129(f)(3) of the CAA, 42 U.S.C. § 7429(f)(3).

85.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, promulgated in accordance with the DCIA, 31 U.S.C. §§ 3701 et seq., provide for the assessment of civil penalties up to $102,638 per day as adjusted by the DCIA. The violation set forth above is subject to injunctive relief and up to $102,638 per violation per day.

**<u>Third Claim for Relief – Failure to Meet the Training Requirements</u>**

86.     Plaintiff realleges and incorporates Paragraphs 1 through 85, as if fully set forth herein.

87.     The SSI unit must only be operated while a fully trained and qualified SSI unit operator is accessible, with certain exceptions, and who has completed an incinerator operator training course and maintained or renewed qualifications, within the requisite time periods. *See*, 40 C.F.R. §§ 60.4810, 60.4815, 60.4820, 60.4825, 60.4830, 60.4835.

88.     Defendant failed to meet the training requirements, within the requisite time periods, with respect to SSI unit #1 at the Facility.

89.     Defendant failed to meet the training requirements, within the requisite time periods, with respect to SSI unit #2 at the Facility.

90.     Defendant failed to meet the training requirements, within the requisite time period, with respect to SSI unit #3 at the Facility.

91.     Accordingly, Defendant has violated, and continues to violate, 40 C.F.R.

§§ 60.4810, 60.4815, 60.4820, 60.4825, 60.4830, 60.4835 and Section 129(f)(3) of the CAA, 42

U.S.C. § 7429(f)(3).

92.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by EPA's Civil

Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, promulgated in accordance with

the DCIA, 31 U.S.C. §§ 3701 et seq., provide for the assessment of civil penalties up to $102,638

per day as adjusted by the DCIA. The violation set forth above is subject to injunctive relief and

up to $102,638 per violation per day.

**Fourth Claim for Relief – Failure to Conduct Initial and Annual Air Pollution Control Device Inspections and Make Any Necessary Repairs**

93.   Plaintiff realleges and incorporates Paragraphs 1 through 92, as if fully set forth

herein.

94.     Under 40 C.F.R. § 60.4875(a), an owner or operator of an SSI unit subject to

NSPS Subpart LLLL must conduct an initial air pollution control device inspection and, under

40 C.F.R. § 60.4875(b), make any necessary repairs within the prescribed timeframes.

95.     Under 40 C.F.R. § 60.4895(a), an owner or operator of an SSI unit subject to

NSPS Subpart LLLL must conduct annual air pollution control device inspections and, under 40

C.F.R. § 60.4895(b), make the necessary repairs within the prescribed timeframes.

96.     Defendant failed to conduct initial air pollution control device inspections with

respect to SSI unit #1 at the Facility.

97.     Defendant failed to conduct annual air pollution control device inspections with

respect to SSI unit #1 at the Facility.

98.     Defendant failed to make necessary repairs based on air pollution control device

inspections with respect to SSI unit #1 at the Facility.

99.     Defendant failed to conduct initial air pollution control device inspections with respect to SSI unit #2 at the Facility.

100.    Defendant failed to conduct annual air pollution control device inspections with respect to SSI unit #2 at the Facility.

101.    Defendant failed to make necessary repairs based on air pollution control device inspections with respect to SSI unit #2 at the Facility.

102.    Defendant failed to conduct initial air pollution control device inspections with respect to SSI unit #3 at the Facility.

103.    Defendant failed to conduct annual air pollution control device inspections with respect to SSI unit #3 at the Facility.

104.    Defendant failed to make necessary repairs based on air pollution control device inspections with respect to SSI unit #3 at the Facility.

105.    Accordingly, Defendant has violated, and continues to violate, 40 C.F.R. §§ 60.4875, 60.4895 and Section 129(f)(3) of the CAA, 42 U.S.C. § 7429(f)(3).

106.    Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, promulgated in accordance with the DCIA, 31 U.S.C. §§ 3701 et seq., provide for the assessment of civil penalties up to $102,638 per day as adjusted by the DCIA. The violations set forth above are subject to injunctive relief and up to $102,638 per violation per day.

**Fifth Claim for Relief – Failure to Submit Site-Specific Monitoring Plans and Conduct Initial Performance Evaluations**

107.    Plaintiff realleges and incorporates Paragraphs 1 through 106, as if fully set forth herein.

108.   Under 40 C.F.R. § 60.4880, the owner or operator of an SSI unit subject to NSPS Subpart LLLL must submit site-specific monitoring plans for continuous monitoring, bag leak detection, and ash handling systems, and conduct initial performance evaluations of the continuous monitoring and bag leak detection systems, in accordance with the timing prescribed in 40 C.F.R. § 60.4880.

109.   Defendant failed to submit site-specific monitoring plans for SSI unit #1 required under 40 C.F.R. § 60.4880.

110.   Defendant failed to conduct initial performance evaluations for SSI unit #1 required under 40 C.F.R. § 60.4880.

111.   Defendant failed to submit site-specific monitoring plans for SSI unit #2 required under 40 C.F.R. § 60.4880.

112.   Defendant failed to conduct initial performance evaluations for SSI unit #2 required under 40 C.F.R. § 60.4880.

113.   Defendant failed to submit site-specific monitoring plans for SSI unit #3 required under 40 C.F.R. § 60.4880.

114.   Defendant failed to conduct initial performance evaluations for SSI unit #3 required under 40 C.F.R. § 60.4880.

115.   Accordingly, Defendant has violated, and continues to violate, 40 C.F.R. § 60.4880 and Section 129(f)(3) of the CAA, 42 U.S.C. § 7429(f)(3).

116.   Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, promulgated in accordance with the DCIA, 31 U.S.C. §§ 3701 et seq., provide for the assessment of civil penalties up to $102,638

per day as adjusted by the DCIA. The violations set forth above are subject to injunctive relief and up to $102,638 per violation per day.

### Sixth Claim for Relief – Failure to Establish, Monitor, Meet, Confirm or Re-establish Operating Limits

117.    Plaintiff realleges and incorporates Paragraphs 1 through 116, as if fully set forth herein.

118.    Under 40 C.F.R. § 60.4855(a), the owner or operator of an SSI unit subject to NSPS Subpart LLLL must meet the applicable operating limits and requirements in 40 C.F.R. § 60.4850 and establish applicable operating limits according to 40 C.F.R. § 60.4870.

119.    Under 40 C.F.R. § 60.4870, the owner or operator of an SSI unit subject to NSPS Subpart LLLL must establish site-specific operating limits during the initial performance test.

120.    Under 40 C.F.R. § 60.4890, the owner or operator of an SSI unit subject to NSPS Subpart LLLL must continuously monitor, meet, confirm or re-establish its site-specific operating limits.

121.    Defendant failed to establish site-specific operating limits with respect to SSI unit #1 at the Facility.

122.    Defendant failed to continuously monitor site-specific operating limits with respect to SSI unit #1 at the Facility.

123.    Defendant failed to meet site-specific operating limits with respect to SSI unit #1 at the Facility.

124.    Defendant failed to confirm site-specific operating limits with respect to SSI unit #1 at the Facility.

125.    Defendant failed to re-establish site-specific operating limits with respect to SSI unit #1 at the Facility.

126.   Defendant failed to establish site-specific operating limits with respect to SSI unit #2 at the Facility.

127.   Defendant failed to continuously monitor site-specific operating limits with respect to SSI unit #2 at the Facility.

128.   Defendant failed to meet site-specific operating limits with respect to SSI unit #2 at the Facility.

129.   Defendant failed to confirm site-specific operating limits with respect to SSI unit #2 at the Facility.

130.   Defendant failed to re-establish site-specific operating limits with respect to SSI unit #2 at the Facility.

131.   Defendant failed to establish site-specific operating limits with respect to SSI unit #3 at the Facility.

132.   Defendant failed to continuously monitor site-specific operating limits with respect to SSI unit #3 at the Facility.

133.   Defendant failed to meet site-specific operating limits with respect to SSI unit #3 at the Facility.

134.   Defendant failed to confirm site-specific operating limits with respect to SSI unit #3 at the Facility.

135.   Defendant failed to re-establish site-specific operating limits with respect to SSI unit #3 at the Facility.

136.   Accordingly, Defendant has violated, and continues to violate, 40 C.F.R. §§ 60.4850, 60.4855(a), 60.4870, 60.4890, and Section 129(f)(3) of the CAA, 42 U.S.C. § 7429(f)(3).

137.    Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, promulgated in accordance with the DCIA, 31 U.S.C. §§ 3701 et seq., provide for the assessment of civil penalties up to $102,638 per day as adjusted by the DCIA. The violations set forth above are subject to injunctive relief and up to $102,638 per violation per day.

### Seventh Claim for Relief – Failure to Submit a Mercury Petition for Specific Operating Limits, Operating Parameters, and Averaging Periods

138.    Plaintiff realleges and incorporates Paragraphs 1 through 137, as if fully set forth herein.

139.    Under 40 C.F.R. § 60.4855(b), the owner or operator of an SSI unit subject to NSPS Subpart LLLL must petition the EPA for specific operating parameters, operating limits, and averaging periods to be established during the initial performance test and to be monitored continuously thereafter.

140.    Defendant failed to submit a petition for specific operating parameters, operating limits, and averaging periods.

141.    Accordingly, Defendant has violated, and continues to violate, 40 C.F.R. § 60.4855(b), and Section 129(f)(3) of the CAA, 42 U.S.C. § 7429(f)(3).

142.    Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, promulgated in accordance with the DCIA, 31 U.S.C. §§ 3701 et seq., provide for the assessment of civil penalties up to $102,638 per day as adjusted by the DCIA. The violation set forth above is subject to injunctive relief and up to $102,638 per violation per day.

**Eighth Claim for Relief – Failure to Submit Reports**

143.   Plaintiff realleges and incorporates Paragraphs 1 through 142, as if fully set forth herein.

144.   Under 40 C.F.R. §§ 60.4915(a)-(e), the owner or operator of an SSI unit subject to NSPS Subpart LLLL must submit a notification of construction, notification of initial startup, an initial compliance report, annual compliance reports, and deviation reports.

145.   Defendant failed to submit a notification of construction report for SSI unit #1 at the Facility.

146.   Defendant failed to submit a notification of initial startup report for SSI unit #1 at the Facility.

147.    Defendant failed to submit an initial compliance report for SSI unit #1 at the Facility.

148.   Defendant failed to submit annual compliance and deviation reports for SSI unit #1 at the Facility.

149.   Defendant failed to submit a notification of construction report for SSI unit #2 at the Facility.

150.   Defendant failed to submit a notification of initial startup report for SSI unit #2 at the Facility.

151.    Defendant failed to submit an initial compliance report for SSI unit #2 at the Facility.

152.   Defendant failed to submit annual compliance and deviation reports for SSI unit #2 at the Facility.

153.   Defendant failed to submit a notification of construction report for SSI unit #3 at the Facility.

154.   Defendant failed to submit a notification of initial startup report for SSI unit #3 at the Facility.

155.    Defendant failed to submit an initial compliance report for SSI unit #3 at the Facility.

156.   Defendant failed to submit annual compliance and deviation reports for SSI unit #3 at the Facility.

157.   Accordingly, Defendant has violated, and continues to violate, 40 C.F.R. §§ 60.4915(a)-(e), and Section 129(f)(3) of the CAA, 42 U.S.C. § 7429(f)(3).

158.   Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, promulgated in accordance with the DCIA, 31 U.S.C. §§ 3701 et seq., provide for the assessment of civil penalties up to $102,638 per day as adjusted by the DCIA. The violations set forth above are subject to injunctive relief and up to $102,638 per violation per day.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

(1) Enjoin Defendant from operating the Facility, including each of the three SSI units located there, except in accordance with the CAA, NSPS Subpart LLLL;

(2)  Assess Defendant civil penalties of up to $102,638 per day for each CAA violation;

(3)  Award the United States all costs and disbursements of this action; and

(4)  Grant such other relief as the Court deems just and proper.

Respectfully submitted,

LEONARD C BOYLE
Acting United States Attorney
District of Connecticut

*/s/ Anne F. Thidemann*
ANNE F. THIDEMANN
Assistant United States Attorney
Federal Bar No. CT28028
1000 Lafayette Boulevard, 10th Floor
Bridgeport, CT 06604
(203) 696-3000 (phone)
(203) 579-5575 (fax)
Anne.Thidemann@usdoj.gov

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

*/s/ Brian G. Donohue*
BRIAN G. DONOHUE
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
Ben Franklin Station P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-5413
donohue.brian@usdoj.gov

OF COUNSEL:

THOMAS OLIVIER
U.S. Environmental Protection Agency, Region 1
5 Post Office Square - Suite 100 (Mail Code: 04-3)
Boston, MA 02109-3912

TAHANI ANN RIVERS
U.S. Environmental Protection Agency, Region 1
5 Post Office Square - Suite 100 (Mail Code: 04-3)
Boston, MA 02109-3912

PROVIDENCE SPINA
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N.W. (Mail Code: 2242A)
Washington, D.C. 20460